UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 18 C 2604 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheryl G.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Cheryl seeks an award of benefits, or in the alternative, a remand to the Commissioner for further proceedings. The Commissioner filed a motion for summary judgment, asking the Court to affirm the ALJ's denial of benefits. For the reasons that follow, the Court grants in part Cheryl's request for a remand, denies the Commissioner's motion [26], reverses the ALJ's decision in part, and remands this case for further proceedings consistent with this Opinion.

## BACKGROUND

Before she fell in the parking lot at work and injured her left ankle on January 29, 2010, Cheryl had worked as a legal secretary and school bus driver. Since then, she has had six surgeries: two left ankle reconstructions, three left knee surgeries, and one left hip surgery. (R. at 54). In August 2013, at age 55, Cheryl applied for benefits based on a left ankle injury, left knee injury, left hip injury, uncontrolled diabetes, anxiety, and pulmonary embolism, alleging an onset date of

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff as "Cheryl G." or "Cheryl."

January 29, 2010. *Id*. at 265-76.  When she filed for disability benefits, Cheryl was 5'4", weighed 240 pounds, and had a body mass index of over 41.2, which is considered "extreme" obesity. *Id*. at 298; SSR 02-01p, 2002 WL 34686281, at *2 (Sept. 12, 2002).  After Cheryl's application was denied initially and upon reconsideration, an administrative law judge ("ALJ") held a hearing. *Id*. at 45-94, 95-154, 157-61, 168-79.  Cheryl, represented by counsel, testified, as did her son James and a vocational expert ("VE"). *Id.* 45-94.

On February 17, 2017, the ALJ issued a decision denying Cheryl's DIB and SSI claims. (R. 22-39).  At the outset, the ALJ determined that Cheryl was last insured as of June 30, 2014. *Id*. at 22.  To be eligible for DIB, a claimant must show that she was disabled as of her date last insured. *See Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012).  Following the Social Security Administration's five-step analysis for evaluating disability, the ALJ found that Cheryl had not engaged in substantial gainful activity from her alleged onset date of January 29, 2010 (step one). (R. 24).  She next determined that Cheryl suffered from the following severe impairments: osteoarthritis in the knees and back; status-post knee replacement, left; degenerative disc disease of the cervical spine, cervical spondylosis; cardiovascular issues, arrhythmias; and obesity (step two). *Id*. at 25.  The ALJ found that Cheryl's hypertension, diabetes mellitus, thyroid disorder, vision problems, headaches, gastrointestinal esophageal reflux disease, and anxiety were non-severe impairments. *Id*. at 25-28.  Applying the Paragraph B criteria, the ALJ found that Cheryl had mild limitations in understanding, remembering, and applying information, mild limitations in concentration, persistence, or pace, mild limitations in adapting or managing herself, and no limitations in interacting with others. *Id*. at 26-28.  The ALJ also found that none of Cheryl's impairments met or medically equaled the severity of a listed impairment, including Listings 1.02

(major dysfunction of a joint), 1.04 (disorders of the spine), and 4.00 (cardiovascular system) (step three). *Id.* at 29.

The ALJ then concluded that Cheryl retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with several additional restrictions. (R. 29-37). Specifically, Cheryl could lift and carry up to ten pounds occasionally and less than ten pounds frequently; she could sit for up to six hours and stand or walk for up about two hours during the workday; she could push/pull as much as she is able to lift; she could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she could never operate foot controls with either foot; she had to avoid all exposure to hazards such as work at unprotected heights and moving, mechanical parts; and she could not be exposed to vibration. *Id*. at 29. Given this RFC, the ALJ determined that Cheryl could perform her past relevant work as a secretary and legal secretary (step four). *Id.* at 37. Alternatively, the ALJ found at step five that other jobs existed in the national economy that Cheryl could perform, such as school secretary, subscription clerk, and order clerk. *Id*. at 38. Based on these steps four and five findings, the ALJ found that Chery was not disabled. *Id.* at 39. The Appeals Council denied Cheryl's request for review on January 18, 2018, leaving the ALJ's February 17, 2017 decision as the final decision of the Commissioner. *Id.* at 5-11; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## **DISCUSSION**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability

within the meaning of the Social Security Act, the ALJ conducts a sequential five-step inquiry, asking: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162 n.2.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano*, 556 F.3d at 562; *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing an ALJ's decision, the Court may "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *See Steele v. Barnhart*, 290 F.3d 936, 938, 941 (7th Cir. 2002) (internal citation and quotations omitted); *see also Fisher v. Berryhill*, 760 Fed. Appx. 471, 476 (7th Cir. 2019) (explaining that the "substantial evidence" standard requires the building of "a logical and accurate bridge between the evidence and conclusion"). Moreover, when the

ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Cheryl raises five main arguments in support of her request for reversal: (1) the ALJ erred in determining that Cheryl did not meet the requirements of Listings 1.02 and 1.03; (2) the ALJ failed to build an accurate and logical bridge between the evidence and her RFC determination; (3) the ALJ's subjective symptom evaluation is flawed; (4) the ALJ failed to state the weight afforded to Cheryl's son's testimony; and (5) the ALJ erred in evaluating the opinion evidence. The Court agrees with Cheryl's last argument that the ALJ inadequately evaluated the medical opinion evidence. Because that failure alone is a ground for remand, the Court does not reach Cheryl's additional arguments.

"An ALJ must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); 20 C.F.R. §§ 404.1527(c), 416.927(c) ("we will evaluate every medical opinion we receive."). Moreover, "[a] treating physician's medical opinion is entitled to controlling weight if it is supported by objective medical evidence and consistent with other substantial evidence in the record." *Id*; *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (the treating physician rule governs claims filed before March 27, 2017); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ is "required to provide a sound explanation" for her decision to reject a treating physician's opinion. *Id*. "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2008).

Cheryl argues that the ALJ erred by failing to make any weight determination with respect to her treating surgeons' opinions. Dr. Mukund Komanduri, an orthopedic surgeon, treated Cheryl from March 8, 2010 through May 6, 2015 for left knee and hip issues. He performed four surgeries on Cheryl: (1) 8/24/2010 – left knee arthroscopy; (2) 5/7/2013 – left hip arthroscopy with labral repair and osteoplasty of the acetabulum and femur; (3) 3/25/2014 – left total knee arthroplasty (knee replacement); and (4) 6/19/2014 – surgery to manipulate the left knee. (R. 656-57, 883-86; 1908-09, 1999). Dr. Komanduri was deposed for over two hours on June 27, 2013 in connection with Cheryl's worker's compensation case. *Id*. at 349-488. During that deposition, Dr. Komanduri testified as follows regarding Cheryl's ability to work:

> Q. [W]as it your opinion that petitioner could have performed some form of light duty?
>
> A. I think she could have probably done some kind of sedentary duty if such an occupation existed in a bus driving facility.
>
> Q. Specifically what kind of sedentary duty are you talking about?
>
> A. Desk job, answering phones. Again, there would probably be restrictions on the number of hours[.] [S]he was on narcotics. She was not safe to drive to work.
>
> She was also, probably going to have to be afforded substantial breaks or half days to allow her to function.
>
> Q. Doctor, specifically aside from desk duty, what restriction would you place on the petitioner regarding the number of hours?
>
> A. So remember we pointed out in the very beginning the hip labral tears and FAI impingement causes pain with prolonged sitting and prolonged standing. That makes it very hard for an employee to never sit for long and never stand for long along with a superimposed knee injury and ankle injury.
>
> I don't know what the answer is. I can't think of a constellation of work status limitations that would allow her to function with any reasonable usefulness. If it's an issue of her just showing up and her sitting in a chair and standing intermittently, she could probably do that.

*Id*. at 456-57.

The ALJ's decision noted the surgeries performed by Dr. Komanduri but completely ignored Dr. Komanduri's deposition testimony. The ALJ did not consider and assign weight to Dr. Komanduri's opinion, specifically his opinion that Cheryl would require "substantial breaks" or "half days" and that her left hip tears and impingement caused pain with "prolonged sitting." (R. 31-33). The ALJ was required to address Dr. Komanduri's opinion and given some indications as to how she weighed it in evaluating Cheryl's RFC. Without any discussion of Dr. Komanduri's opinion evidence, the ALJ failed to build a logical bridge from the evidence to her RFC conclusion. *Roddy*, 705 F.3d at 636. The ALJ's failure to evaluate and weigh Dr. Komanduri's opinion is a serious error which requires remand unless it is harmless error.

The Commissioner concedes that the ALJ "overlook[ed]" Dr. Komanduri's opinion but essentially argues that any error is harmless. (Doc. 27, at 10). An error is harmless when it is "predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The harmless error analysis is "prospective—can we say with great confidence what the ALJ would do on remand"— and not "an exercise in rationalizing the ALJ's decision." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

The Commissioner's harmless error arguments are unpersuasive. The Commissioner's first argument is that a remand is unnecessary because Dr. Komanduri's opinion would not have aided Cheryl's case. According to the Commissioner, Dr. Komanduri's opinion is equivocal but certainly suggests that Cheryl is capable of sedentary work, as found by the ALJ. The Court rejects the Commissioner's argument because Dr. Komanduri's opinion in fact supported a disability

finding. The Commissioner ignores that Dr. Komanduri opined that, with respect to sedentary jobs, Cheryl would need "substantial breaks" or "half days." The VE confirmed that an inability to complete an eight-hour work day and a need for substantial breaks is not compatible with competitive employment. (R. 85-86, 88). Moreover, Dr. Komanduri opined that prolonged sitting caused Cheryl pain, yet the RFC permits sitting up to six hours. The VE confirmed that an inability to sit, stand, and walk for a full eight hours would not be compatible with a competitive position. *Id*. Given this evidence, the ALJ's consideration of Dr. Komanduri's opinion could lead to a different result on remand and thus, the ALJ's failure to do is not a harmless error.

The Commissioner's argument that "Dr. Komanduri did not cabin his opinion in terms of work-related limitations, and instead gave an unsure opinion on plaintiff's ability to find work" also fails. (Doc. 27 at 10). The Court agrees with the Commissioner that Dr. Komanduri's statement that he could not think of a "constellation of work status limitations that would allow her to function with any reasonable usefulness" is not a medical opinion, but an opinion on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (an opinion by a medical source that you are "disabled" or "unable to work" is "reserved to the Commissioner."). But Dr. Komanduri also rendered an opinion about Cheryl needing "substantial breaks or half days to allow her to function" at a sedentary job because her hip issues caused pain with prolonged sitting and standing. (R. 456-57). The ALJ should have considered this portion of Dr. Komanduri's testimony and given some indication of how she weighed it in evaluating Cheryl's disability claim. Finally, the Commissioner asserts that a fair reading of Dr. Komanduri's testimony in context shows that "Dr. Komanduri said that if working as a bus driver Cheryl would 'probably' need to be afforded substantial breaks or half days," and thus, Dr. Komanduri's answers are supportive of the ALJ's RFC determination. (Doc. 27 at 11). The Court disagrees and reads Dr. Komanduri's

testimony more broadly to include Cheryl's need for "substantial breaks" and "half days" as relating to any sedentary job. In any event, if Dr. Komanduri's testimony on this issue was unclear or ambiguous and could be read as suggested by Cheryl or the Commissioner, then the ALJ could have contacted Dr. Komanduri to clarify whether his opinion refers to Cheryl's ability to perform any sedentary job, as opposed to only the bus driver job. 20 C.F.R. § 404.1520b(2)(i) ("[I]f after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your medical source.")

The ALJ also did not explain why she essentially rejected Dr. Komanduri's opinion and instead gave "great weight" to Dr. Kimberly Middleton's view. On July 31, 2014, Dr. Kimberly Middleton performed an Independent Medical Examination of Cheryl. (R. 1803-1810). Dr. Middleton opined that Cheryl's "knee, hip and ankle condition would likely preclude her from performing labor intensive work. She is likely able to lift more than 20 pounds and 10 pounds on a repetitive basis. She is unable to squat, kneel or ascent or descend stairs on a repetitive basis. She is able to sit, perform fine and gross movements of both hands and communicate." *Id*. at 1810.

"Even though the ALJ was not required to give [Dr. Komanduri's] opinion controlling weight, [s]he was required to provide a sound explanation for h[er] decision to reject it and instead adopt [Dr. Middleton's] view." *Roddy*, 705 F.3d at 636. "In assessing conflicting medical opinion evidence, ALJs must consider a variety of factors, including whether a physician is a treating or examining physician; the length, nature, and extent of the treatment relationship; the physician's specialty, and the consistency and supportability of the physician's opinion." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). According to the agency's regulations, "more weight should be given to the opinions of doctors who have (1) examined a claimant, (2) treated a claimant

9

frequently and for an extended period of time, (3) specialize in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, (5) offered opinions that are consistent with objective medical evidence and the record as a whole." *Roddy*, 705 F.3d at 637.

The ALJ did not consider any of the relevant factors with respect to Dr. Komanduri. Dr. Komanduri is an orthopedic surgeon who performed three surgeries on Cheryl's left knee and one surgery on her left hip. He examined and treated Cheryl on numerous occasions between March 2010 and May 2015 and used x-rays and MRIs as diagnostic aids. He also prescribed pain medication and a knee brace and referred Cheryl to multiple rounds of physical therapy.

In contrast, Dr. Middleton specializes in family medicine, rather than orthopedics. (R. 1810). She examined Cheryl on one occasion for 25 minutes and reviewed only a limited number of medical records. *Id*. at 1808, 1810. Moreover, Dr. Middleton's assessment was made two months before Cheryl underwent total left knee replacement on March 25, 2014 and before the June 19, 2014 surgery to manipulate her left knee. Dr. Middleton also did not have the opportunity to consider subsequent medical records indicating that Cheryl had "extensive scar tissue that the manipulation did not benefit," she was "not mobile enough for her to be independent of a cane," and her left leg was a "complete brick." *Id*. at 2085, 2257-58, 2343. The factors support giving significant weight to Dr. Komanduri's assessment of Cheryl's condition and crediting his opinion over Dr. Middleton's, and the ALJ's failure to address them was error.

Moreover, the ALJ stated that she assigned "great weight" to Dr. Middleton's opinion "[f]or the reasons discussed above." (R. 37). This conclusory statement fails to identify any specific evidence discussed earlier in the decision that supports the ALJ's decision to give "great weight" to Dr. Middleton's opinion and thus, fails to build the requisite logical bridge between the evidence and the ALJ's conclusion. In addition, Dr. Middleton's opinion does not support the

ALJ's RFC determination that Cheryl had the ability to sit for six hours in an eight our workday because Dr. Middleton did not specify the number of hours in an eight-hour workday that Cheryl was capable of sitting. *Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010) (consultative examiner's "evaluation did not include a *functional* assessment of [claimant's] abilities, nor did she opine about any limitations [claimant's] impairments may have caused, so her report could not be used to support specific limitations included in [claimant's] residual functional capacity."). Without Dr. Middleton's opinion as to Cheryl's sitting ability, the only contrary opinions in the medical record are from the non-examining state agency physicians' evaluations, whose opinions the ALJ gave "some weight." (R. 37). Dr. Komanduri's opinion that Cheryl's condition caused pain with "prolonged sitting" may not be dismissed because non-examining physicians had contrary opinions. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). Thus, substantial evidence does not support the ALJ crediting Dr. Middleton's opinion over Dr. Komanduri's opinion.

Another serious deficiency in the ALJ's analysis is her failure to articulate the weight given to the December 27, 2012 opinion of Cheryl's podiatrist, Joe George, D.P.M. (R. 1208-09). Dr. George performed a left ankle arthroscopy on Cheryl on December 21, 2011 and September 26, 2012. *Id*. at 892-93, 1119-20. The Commissioner argues that the "ALJ discussed the opinion and implicitly considered it in reaching her RFC finding." (Doc. 27, at 9). But the "weight given to a treating physician cannot be implied: the decision must be sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *David v. Barnhart*, 446 F.Supp.2d 860, 871 (N.D. Ill. Aug. 14, 2006).

The ALJ briefly discussed some of Dr. George's findings but erred when she did not assign his opinion any specific weight. (R. 31-32). She also failed to evaluate the entirety of Dr. George's opinion by focusing only on Dr. George's findings that supported her assessment of Cheryl's RFC. For example, the ALJ correctly mentioned that Dr. George opined in December 2012 that Cheryl's capacity for walking, bending, standing, stooping, climbing, pushing, and pulling during an eight hour workday, five days a week is more than 50% reduced. *Id*. at 31-32, 1208. However, the ALJ failed to mention Dr. George's opinion that Cheryl had "20 to 50% Reduced Capacity" in turning and fine and gross manipulation. *Id*. at 1208. "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 301, 306 (7th Cir. 2010); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'"). The ALJ additionally erred by failing to consider the relevant regulatory factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) and by failing to determine what particular weight Dr. George's opinion deserved.

The Commissioner again suggests harmless error, arguing that the ALJ's finding that Cheryl could sit for six hours, stand and/or walk two hours, lift ten pounds, and occasionally balance and stoop are "[a]lmost directly in line" with Dr. George's findings. (Doc. 27 at 9). The Commissioner does not acknowledge the ALJ's failure to discuss Dr. George's fine and gross manipulation limitations of 20 to 50% reduced capacity. It is not clear that the ALJ would reach the same result if the case is remanded because once she adequately considers the manipulative limitations set forth by Dr. George, the jobs that Cheryl is found able to perform may change. "Gross manipulation" means "handling" and "fine manipulation" means "fingering." *Alaura v. Colvin*, 2015 WL 506205, at *7 (N.D. Ind. Feb. 6, 2015) *rev'd and remanded on other grounds*

797 F.3d 503 (7th Cir. 2015); *Greenwood v. Barnhart*, 433 F.Supp.2d 915, 926 (N.D. Ill. 2006). The jobs the ALJ identified at steps four and five require frequent (from ⅓ to ⅔ of the time) handling and fingering, and Dr. George concluded Cheryl had up to 50% reduced capacity in fine and gross manipulation. (R. 37-38); *see* DOT 201.362-030 (Secretary), 1991 WL 671672 (4th ed., Rev. 1991); DOT 201.362-010 (Legal Secretary), 1991 WL 671667 (4th ed., Rev. 1991); DOT 201.362-022 (School Secretary), 1991 WL 671670 (4th ed., Rev. 1991); DOT 209.362-010 (Subscription Clerk), 1991 WL 671766 (4th ed., Rev. 1991); DOT 249.362-026 (Order Clerk), 1991 WL 672320 (4th ed., Rev. 1991). The manipulative limitations ignored by the ALJ have the potential to conflict with the jobs identified by the ALJ, and therefore, the ALJ's improper consideration of Dr. George's opinion is not harmless error. *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (remanding where the jobs the VE identified "as defined by the DOT" required "capabilities that are beyond [the claimant's] limitations.").

In light of the above errors, a remand is required so the ALJ may properly weigh all the medical opinion evidence. If the ALJ decides on remand not to give controlling weight to Cheryl's treating physicians' opinions, then the ALJ must determine the specific weight they should be given using the regulatory factors. On remand, the ALJ must state the weight given to each of the medical opinions in the record.

Cheryl argues that a reversal and an award of benefits, as opposed to a remand, is the appropriate remedy here. When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). When an ALJ's decision is not supported by substantial evidence, the Seventh Circuit has "held that a remand for further proceedings is the appropriate remedy unless the evidence before the court compels an

award of benefits." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). Thus, an award of benefits is appropriate only where "all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.*

In this case, a remand is appropriate because the reason for reversal is the ALJ's failure to evaluate the medical opinions of the treating physicians. It is the duty of the ALJ, not the Court, to weigh the medical opinion evidence according to the regulatory factors. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do."). On remand, the ALJ will determine the weight to be given to the treating physicians' opinion in light of the required checklist of factors and then reevaluate Cheryl's RFC. Because the ALJ is required to more thoroughly analyze the medical opinion evidence and articulate her analysis, the Court cannot conclude the record yields one supportable conclusion.

## CONCLUSION

For these reasons, Cheryl's request for a remand is granted in part as discussed above, and the Commissioner's Motion for Summary Judgment (Doc. 26) is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

**SO ORDERED.**

Dated: September 17, 2019

Sunil R. Harjani
United States Magistrate Judge